

$350

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Reginald Fenter : 
 : 11  4916
      v. : Civil Action No.
 : 
Kraft Foods Global, Inc. : Jury Trial Demanded

## COMPLAINT

Plaintiff, Reginald Fenter, by and through his undersigned attorney, hereby brings a series of claims against Defendant, Kraft Foods Global, Inc. ("Kraft"), of which the following is a statement:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction to hear this complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331 and 1343, this action being brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991) to redress and enjoin the discriminatory practices of Kraft. This Court may exercise jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1687.

2. Venue is proper in the Eastern District of Pennsylvania by reason of 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial number of the acts and omissions that give rise to this Complaint occurred in this district.

3. Kraft employs facially neutral policies that allow its managers discretion to act and that have resulted in discriminatory actions against its African-American employees; it employs a Human Resources process that gives lip service to investigating discrimination complaints but does not provide fair investigation of discrimination claims; and it otherwise allows management to take discriminatory actions against African-American employees. In

Page | 1

addition, Kraft retaliates against African-American management employees who complain about illegal race discrimination, and fails to take adequate and/or timely corrective action in response to complaints of race discrimination.

## PARTIES

4. Plaintiff Reginald Fenter is an African-American resident of New Jersey. He began working for Kraft in 1974 and was employed until February 2008, when he was constructively discharged because of his race and in retaliation for having complained about race discrimination. He was last employed by Kraft as a Retail Sales Manager.

5. Defendant Kraft Foods Global, Inc., is the leading food company in the United States with a principal place of business located in this judicial district at 201 Precision Drive, Horsham, Pennsylvania. The acts set forth in this Complaint were authorized, ordered, condoned and/or done by Kraft's officers, agents, employees and/or representatives while actively engaged in the management of Kraft's business.

6. Fenter had an exemplary career at Kraft, including the following accomplishments, among others:

   a. In 1976, he received the Vice-President's Award for outstanding sales performance.

   b. From 1976-84, while serving as a Customer Category Manager ("CCM"), Fenter handled every account in the New Jersey region and obtained positive results on each.

   c. From 1984-90, while serving as a Retail Sales Manager ("RSM"), he successfully managed every sales team in New Jersey, two (2) sales teams in New York, and SuperValu in Pennsylvania (as far west as Hazelton). He also managed the CCMs

Page | 2

handling New Jersey and New York headquarter accounts, as well as interviewing and hiring new personnel.

d. From 1990-94, while serving as the Senior Retail Sales Manager for New Jersey, Fenter managed all of the RSMs and all New Jersey retail operations.

e. From 1994-99, while serving as the Customer Business Manager ("CBM), he was responsible for major New Jersey customers and business teams.

f. In 2000, after defendant restructured, Fenter accepted RSM responsibilities. From 2000-08, until his constructive discharge in February 2008, Fenter was the RSM for New Jersey, New York, Pennsylvania, Delaware and Maryland.

g. In 1994, Fenter also received the Account Selling Team Award for outstanding performance related to three (3) New Jersey and two (2) New York Headquarter Accounts, as well as the CBT Progress Award for team sales performance at two (2) New Jersey and two (2) New York Headquarter Accounts.

h. In 1997, Fenter received the Sales Leadership Ring for outstanding performance against business goals for eight (8) consecutive years.

i. In 1999, Fenter received the Jerry Dow Award for outstanding RSM in the Eastern Region.

j. Fenter achieved performance ratings of "Exceeds Expectations" for 24 of his 33 years with Kraft, and performance ratings of "Fully Meets Expectations" for the remaining nine (9) years.

k. Fenter was directly responsible for promoting 27 employees during a 22-year period.

l. Fenter directed Tact Teams, which were responsible for creating and implementing strategies to improve regional sales performance.

m. Fenter served as an Instructor at numerous company seminars and workshops designed to train newly-promoted account and sales managers.

7. Despite years of exemplary performance and achievement, as described herein, Fenter experienced a racially hostile work environment at Kraft, was retaliated against when he complained about the racially hostile work environment for him and other African American sales professionals, and otherwise experienced work conditions that left him with no reasonable alternative other than to resign his employment.

8. Defendant intentionally put Fenter at a competitive disadvantage vis-à-vis non-African American RSMs. Defendant assigned Fenter to a sales territory that was 65 miles from his home, despite the fact that two White sales managers, Pat Price and Bob Daratgy, both lived 20 miles closer to the territory than Fenter. As a consequence of this assignment, Fenter spent many hours driving that could have been better spent working with and training sales representatives.

9. Fenter was required to travel over 100 miles to the Spring Valley, New York, area for meetings, whereas Price and Daratgy had to travel only 10 miles to Edison, New Jersey for meetings.

10. Defendant assigned to Fenter's sales team sales representatives with a total of 7.5 years of experience selling Nabisco products, which made it more difficult for him to achieve his sales goals, while non-African American managers were assigned sales teams with members that had a minimum total of 24 years of experience selling Nabisco products and good individual performance histories.

11. Defendant intentionally assigned to Fenter's team sales representatives with inadequate skills in an effort to force Fenter to resign. The sales representatives assigned to Fenter's team did not demonstrate the proper attitude, appropriate skills (including, particularly presentation skills) that would enable them to sell promotions. The reputation of these sales representatives was such that some managers believed that these employees were assigned to managers that Kraft intended to force into retirement. All of the sales representatives on Fenter's team, except one, received "More Is Expected" or "Unsatisfactory Performance" performance ratings. Fenter's team also constantly had vacant territories because of representatives going out on disability. He was constantly interviewing to fill routes and using part-time personnel from distant geographies to fill routes. Fenter's team also had disciplinary issues, as reflected by the fact that Fenter was impelled to issue discipline to numerous team members. Fenter's territory also encompassed the most crime-ridden areas of New Jersey. And other sale teams' product deliveries were given priority over Fenter's team's product deliveries. As a result, his team's customers refused late deliveries and he was constantly fielding calls from Kraft Customer Care between 5:00 AM and 6:00 AM.

12. Fenter was a member of the Black Sales Caucus at Kraft, a group that had existed for many years and whose principal objective was to address race-related issues at Kraft and ensure the creation of a level playing field for African Americans at Kraft so that there would be a higher percentage of qualified employees given the opportunity for promotions. Fenter mentored eight (8) employees in various parts of the country. He advocated forcefully for the promotion of four qualified African American sales representatives: Denise Ruffin, Erica Steverson, Keri Baucum and David Patterson. In each case, Fenter's efforts were opposed by Kraft management. In the case of Patterson, Fenter's boss, Jim Kervick, told him that there was

something in Patterson's personnel file that indicated that he would never be accepted for promotion. Fenter attempted to learn what this information was, but it was never provided to him. Ultimately, Ruffin, Steverson and Baucum were promoted. Patterson was never promoted. In contrast, Fenter nominated 14 White sales representatives for promotion (including Lisa Angeles, Jeff Goldstein, Tony Karpinski, Glenn Amato, Ben Triscari, Allison Soden and Tom Kubicki) and with the exception of one, they were all promoted without any opposition from Kraft management. Kraft management viewed Fenter's actions in support of the African American sales representatives as pushy, threatening and offensive.

13.     Fenter complained to Darryl Brown, Vice President of Sales, and Richard Martino, Vice President of Headquarters Sales, in late 2007 about the racially hostile work environment. In violation of established policy, neither Brown nor Martino informed Kraft's Human Resources Department about Fenter's complaint, and to Fenter's knowledge, no investigation of his complaint was ever undertaken.

14.     Sometime prior to February 2008, as a result of the events described above, Fenter concluded that of four (4) district managers, he and two (2) other minority managers were being targeted by Kraft. Consequently, Fenter determined that he had no alternative other than to resign his employment with Kraft, and he was effectively constructively discharged in February 2008.

15.     Kraft discriminated and retaliated against Fenter in connection with his constructive discharge by refusing to offer him a severance package. In contrast, both prior to and after his constructive discharge, Kraft offered severance packages of at least one (1) years' salary to the following employees, only one of whom is African American: Grace McLee, Leo

Acosta, Bill Marks, Carl Piergiorgi, Hank Claire, Janine Bigos, James Hunt, Christine Villamar, Ninetka Hurley, John McCleary, Tim Galloway, and six (6) White administrative employees.

16. The acts alleged above constitute violations of 42 U.S.C. § 1981.

17. By reason of Kraft's discrimination, Fenter has suffered extreme harm, including loss of compensation, wages, back and front pay, bonuses, and other employment benefits, as well as other compensatory damages, including mental anguish, embarrassment, humiliation and pain and suffering.

18. Kraft has acted, and failed to act, with reckless disregard for Fenter's federally protected rights.

19. Fenter demands a trial by jury of all issues so triable, and an award of compensatory and punitive damages, front pay and back pay, prejudgment interest, attorneys' fees, costs, and expenses and whatever other equitable relief the Court deems proper.

## PLAINTIFFS' CLAIMS

### *Count I*

### The Civil Rights Act of 1866, 42 U.S.C. § 1981

20. Plaintiff restates and realleges paragraphs 1- 19, inclusive, as though set forth here in full.

21. Kraft discriminated against, harassed and retaliated against the Plaintiff by denying him the same rights as enjoyed by White employees with respect to the terms and conditions of his employment relationship with Kraft and to the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended.

22. Kraft's conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of the Plaintiff.

23. By reason of Kraft's discrimination, in addition to the relief described above, Plaintiff is entitled to all legal and equitable remedies available under Section 1981, including but not limited to damages for mental anguish and punitive damages.

### *Count II*

<u>The New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 et seq.</u>

24. Plaintiff restates and realleges paragraphs 1- 19, inclusive, of this Complaint, as if set forth in full.

25. Kraft is an employer within the meaning of the New Jersey Law Against Discrimination ("LAD").

26. Kraft's actions described above were severe and/or pervasive enough to make a reasonable African American male in Plaintiff's position believe that the conditions of his employment were intolerable, hostile and abusive.

27. Kraft failed to remedy its managers' racially hostile, discriminatory and retaliatory actions despite Plaintiff's complaints to upper management.

28. Kraft's conduct as described above warrants an award of punitive damages.

29. The acts and omissions described above violated the LAD's prohibition against discrimination, harassment and retaliation as set forth in N.J.S.A. 10:5-12 et seq.

30. By reason of Kraft's violation of the LAD, Plaintiff is entitled to all damages available under the LAD

### **JURY DEMAND**

31. Plaintiff hereby demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Reggie Fenter, respectfully prays that the Court:

a.  adjudge, decree and declare that Kraft has engaged in illegal race discrimination and that the practices of Kraft complained of herein are violative of the rights secured to the Plaintiffs;

b.  order Kraft to effect any other job relief determined to be appropriate;

c.  enter judgment in favor of the Plaintiff and against Kraft for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, and past and future mental anguish and pain and suffering in amounts to be determined at trial;

d.  order Kraft to pay punitive damages to the Plaintiff in an amount to be determined at trial;

e.  order Kraft to pay the attorneys' fees, costs and expenses and expert witness fees of the Plaintiff associated with this action pursuant to 42 U.S.C. § 1988;

f.  grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

g.  retain jurisdiction until such time as the Court is satisfied that Kraft has remedied the unlawful and illegal practices complained of herein and is determined to be in full compliance with the law.

Robert T. Vance, Jr. (RTV3988)
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1530
Philadelphia PA 19110
215 557 9550
215 557 9552 f

*Attorney for Reginald Fenter*