IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| REGINALD FENTER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 11-4916 |
| KRAFT FOODS GLOBAL, INC., | : | |
| Defendant. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                    **NOVEMBER 14, 2012**

      Presently before the Court is a Motion for Summary Judgment by Defendant Kraft Foods Global, Inc. ("Defendant"), a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment by Plaintiff Reginald Fenter ("Plaintiff"), and Defendant's Reply Memorandum in Support of its Motion for Summary Judgment. For the reasons explained below, the Defendant's Motion for Summary Judgment will be granted.

**I.**     **BACKGROUND**

      This is an employment discrimination case.[1] Plaintiff, who is an African-American former employee of Defendant, contends that he was constructively discharged, retaliated against, and harassed because of his race. Plaintiff was employed by Defendant from 1974 until 2008. (Compl. ¶ 4.) Plaintiff alleges that he was constructively discharged in February 2008 because of his race and in retaliation for having complained about race discrimination. (Id.) Plaintiff held many positions during his time with Defendant, but he was last employed as a

---

[1] Pursuant to 28 U.S.C. § 1331, federal question jurisdiction exists based upon 42 U.S.C. § 1981.

Retail Sales Manager. (Id.) Despite years of exemplary performance and achievement, Plaintiff contends that he experienced a racially hostile work environment, was retaliated against when he complained about the racially hostile work environment for himself and other African-American sales professionals, and otherwise experienced work conditions that left him with no reasonable alternative other than to resign his employment. (Id. ¶ 7.)

Plaintiff claims that Defendant intentionally put him at a competitive disadvantage against Retail Sales Managers who were not African-American by assigning him to a sales territory that was 65 miles away from his home while two white Sales Managers lived closer to the territory. (Id. ¶ 8.) Consequently, Plaintiff spent many hours in his car traveling to his sales territory that he could have spent working with and training Sales Representatives. (Id.) Also, he claims that he was required to travel over 100 miles to New York for meetings whereas white Sales Managers only had to travel 10 miles to New Jersey. (Id. ¶ 9.) Further, Plaintiff states that his territory encompassed the most crime-ridden areas of New Jersey. (Id. ¶ 11.)

Additionally, Plaintiff claims that Defendant assigned Sales Representatives to his sales team with significantly less pertinent sales knowledge and years of experience than managers who were not African-American. (Id. ¶ 10.) Plaintiff states that Defendant intentionally assigned Sales Representatives with inadequate skills to Plaintiff's sales team in an effort to get him to resign. (Id. ¶ 11.) Also, as a member of Defendant's Black Sales Caucus, Plaintiff alleges that he forcefully advocated for the promotion of four qualified African-American Sales Representatives, and three were promoted. (Id. ¶ 12.) Regarding the fourth Sales Representative, Plaintiff claims that Defendant did not promote him explaining that some issue in the person's personnel file indicated that he would never be accepted for promotion. (Id.)

Plaintiff unsuccessfully attempted to access the personnel file. (Id.) According to Plaintiff, his efforts of promoting African-Americans were opposed by management. (Id.) Plaintiff states that when he nominated 14 white Sales Representatives for promotions, all but one were promoted without any opposition from management. (Id.) Plaintiff states that Defendant's management viewed his actions in support of the African-American Sales Representatives as pushy, threatening and offensive. (Id.)

Plaintiff alleges that he complained about the racially hostile work environment to Darryl Brown, Vice President of Sales, and Richard Martino, Vice President of Headquarters Sales, in 2007. (Id. ¶ 13.) According to Plaintiff, in violation of established policy, neither Brown nor Martino informed Defendant's Human Resources Department about Plaintiff's complaint. (Id.) Plaintiff states that no investigation of his action was conducted. (Id.)

Sometime prior to February 2008, Plaintiff alleges that he concluded that of four District Managers, he and two other minority Managers were being targeted by Defendant. (Id. ¶ 14.) Consequently, Plaintiff determined that he had no alternative other than to resign his employment with Defendant, and he was constructively discharged in February 2008. (Id.) According to Plaintiff, Defendant discriminated and retaliated against him in connection with his alleged constructive discharge by refusing to offer him a severance pay package. (Id. ¶ 15.) Plaintiff states that Defendant offered severance pay packages of a salary of at least one year to other employees both prior to and after his constructive discharge. (Id.)

On August 1, 2011, Plaintiff filed his Complaint alleging employment discrimination in violation of 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12 et. seq. (Compl., ¶¶ 20-30.) On December 27, 2011, Plaintiff's claim under the New Jersey

Law Against Discrimination, N.J.S.A. § 10:5-12 et. seq., was dismissed by the Court. Thus, the only remaining claim is Plaintiff's Section 1981 claim. Defendant has moved for summary judgment regarding this claim. Plaintiff has opposed Defendant's Motion, and Defendant's have filed a Reply Memorandum. For the reason set forth below, Defendant's Motion for Summary Judgment is granted.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond

4

the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## III. DISCUSSION

Plaintiff opposes Defendant's Motion for Summary Judgment in the following two ways: (1) by seeking a postponement of a decision under Federal Rule Civil Procedure 56(d)[2] to permit additional discovery and (2) by arguing that he has provided enough evidence to survive summary judgment. Neither argument is successful. We will address each argument in turn.

### A. *Plaintiff's Request Pursuant to Federal Rule of Civil Procedure 56(d)*

Plaintiff requests, pursuant to Federal Rule of Civil Procedure 56(d), that the Court grant him a continuance to conduct certain discovery prior to deciding Defendant's Motion for Summary Judgment. (Pl.'s Opp'n Def.'s Mot. Summ. J. at 1 n.1, 19-23.) Specifically, Plaintiff argues that the Court's denial of his Motion to Compel earlier in the litigation prevents him from presenting evidence essential to justify his opposition to Defendant's Motion for Summary

---

[2] Plaintiff seeks postponement and additional discovery pursuant to Federal Rule of Civil Procedure 56(f). (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 1, 19-23.) "As part of a general restyling of the Federal Rules of Civil Procedure in December 2007, the language of Rule 56(f) was amended and incorporated into Rule 56(d)." Penn. Dept. of Pub. Welfare v. Sebelius, 674 F.3d 139, 157 n.3 (3d Cir. 2010) (citing Fed. R. Civ. P. 56(d)). "These amendments were 'intended to be stylistic only,' and Rule 56(d) 'carries forward without substantial change the provisions of former subdivision (f).'" Id. (quoting Advisory Committee Notes, Fed. R. Civ. P. 56(d)). We will interpret Plaintiff's references to Rule 56(f) as references to Rule 56(d), and, in order to be consistent, we will adjust all references in cases citing to Rule 56(f) under the older version of the Rule to refer to the current Rule 56(d).

5

Judgment. (Id.) Plaintiff's counsel has submitted an affidavit in support of this request. (Aff. of Robert T. Vance, Jr. (Vance Aff.)). After consideration of Plaintiff's request, as well as the Vance Affidavit, we find that both are insufficient to warrant a delay in deciding the pending summary judgment motion.

   *1. Law*

Federal Rule of Civil Procedure 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Interpreting this Rule, and its predecessor, Rule 56(f), the United States Court of Appeals for the Third Circuit ("Third Circuit") in Dowling v. City of Phila., 855 F.2d 136, 140–41 (3d Cir. 1988), has construed it as requiring that "a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." See also Penn. Dept. of Pub. Welfare v. Sebelius, 674 F.3d at 157 (stating that Rule 56(d) specifies the procedure to be followed when a party opposing summary judgment believes that additional time for discovery is necessary). The Third Circuit has held that "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course" if the party opposing summary judgment files an affidavit addressing the aforementioned three requirements with specificity, and particularly when detailed information, necessary to the successful opposition to summary judgment, is in the sole possession of the moving party. Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984); see also

Atl. Deli & Grocery v. United States, No. 10-4363, 2011 WL 2038758, at *3 (D.N.J. May 23, 2011).

A district court has discretion when deciding a Rule 56(d) motion. Contractors Assoc. of E. Penn. Inc. v. City of Phila., 945 F.2d 1260, 1267 (3d Cir. 1991). "Vague or general statements of what a party hopes to gain through a delay for discovery under former Rule 56(f), now Rule 56(d), are insufficient." Atl. Deli & Grocery, 2011 WL 2038758, at *3 (citing Hancock Indus. v. Schaeffer, 811 F.2d 225, 230 (3d Cir. 1987)). Also, in the case where relevant material was not timely pursued, the party seeking additional discovery must adequately explain the lack of diligence. See Lunderstadt v. Colafella, 885 F.2d 66, 71 (3d Cir. 1989) (citations omitted).

*2. Analysis*

The Vance Affidavit submitted by Plaintiff's attorney does not successfully address all of the Dowling requirements. Plaintiff's counsel does state what particular information he seeks. Specifically, Plaintiff's counsel explains that he is seeking Defendant's responses to Plaintiff's Interrogatories Nos. 2, 6, and 7, and Document Request Nos. 13-17, 21, 22, 37, and 38.[3] (Vance Aff. ¶¶ 7-10.)

He also states that the information was not previously obtained because the Court erroneously denied his Motion to Compel the information on August 24, 2012. (Id. ¶¶ 3, 8-9.) While we did deny Plaintiff's Motion to Compel, Plaintiff's counsel fails to satisfactorily explain how such denial was erroneous. Notably, Plaintiff did not file a reconsideration motion and did not pursue his discovery issues any further with the Court after the denial of his Motion to

---

[3] Plaintiff's counsel also states that he requests a period of thirty days after production of the information and documents to conduct any depositions necessitated by the production. (Vance Aff. ¶ 10.)

7

Compel. In fact, it is only in his response to Defendant's Motion for Summary Judgment that the Court is hearing, for the first time, that Plaintiff cannot adequately defend his action without the aforementioned answers to his Interrogatories and information requested in his Request for Production of Documents.

Importantly, Plaintiff's counsel fails to explain how a discovery period of more than six months, including two extensions of time, resulted in an inadequate opportunity to uncover sufficient evidence to support his claims. Notably, during this discovery period, six depositions were conducted, and Plaintiff received written discovery responses and over 300 pages of documents from Defendant. (Def.'s Reply Brief at 2.) We also granted Plaintiff's counsel two extensions of time to file a response to Defendant's Motion for Summary Judgment only to be informed that Plaintiff believes that our denial of his Motion to Compel months ago necessitates a delay in deciding the pending summary judgment motion. In our December 27, 2011 Memorandum Opinion denying Defendant's Motion to Dismiss regarding Plaintiff's Section 1981 claims, we specifically explained to Plaintiff that discovery in this action was imperative to the survival of his claims:

> We note, however, that Plaintiff's factual allegations only plausibly give rise to an entitlement of relief allowing the case to move forward at this early stage of the litigation. During the discovery process, Plaintiff will be required to produce evidence of his allegations, including specific names and dates. At this time, though, Plaintiff survives Defendant's Motion to Dismiss Count I.

Fenter v. Kraft Foods Global, Inc., No. 11-4916, 2011 WL 6779325, at *3 (E.D. Pa. Dec. 27, 2011).

"A basic tenet of Fed. R. Civ. P. 56(d) is that 'summary judgment [should] be refused

where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" In re Asbestos Prods. Liab. Litig. (No. VI), No. 09-69125, 2011 WL 1539883, at *2 (E.D. Pa. Feb. 22, 2011 ) (quoting Price ex rel. Price v. W. Res., Inc*.,* 232 F.3d 779, 783 (10th Cir. 2000)), *adopted by* 2011 WL 1540124 (E.D. Pa. Apr. 22, 2011). "A request for a continuance to conduct additional discovery pursuant to Fed. R. Civ. P. 56(d) should be denied where, *inter alia,* movants 'had ample time and opportunity to conduct discovery, but failed to do so.'" Id. (quoting Swisher v. Collins*,* 409 Fed. App'x 139, 142 (9th Cir. 2011)). While Rule 56(d) should be liberally construed, the party requesting the continuance must demonstrate due diligence in pursuing discovery before the filing of the summary judgment motion. See Allstate Ins. Co. v. Century Indem. Co., No. 06-4373, 2009 WL 3646291, at *2-3 (E.D. Pa. Oct. 29, 2009) (citations omitted). Since Plaintiff was given ample time and opportunity to conduct discovery in this case, but failed to do so, this situation does not warrant an extension of time under Rule 56(d).

Additionally, the Vance Affidavit is deficient because it does not show how, if uncovered, the requested information would preclude summary judgment in this case. See Dowling*,* 855 F.2d at 140–41. While addressing the Interrogatories and Requests for Production of Documents, Plaintiff's counsel essentially argues that each is relevant, without more, to Plaintiff's claims. He fails to show how receiving the requested information and documents would alter the outcome of the Court's adjudication of Defendant's Motion for Summary Judgment. For this reason, and the reasons explained above, Plaintiff's request for a continuance for additional discovery in this case does not meet the requirements of Rule 56(d) and, therefore, is denied.

9

**B.** *Plaintiff's Opposition to Defendant's Motion For Summary Judgment*

In Count I, Plaintiff alleges that Defendant discriminated against him based on his race in violation of 42 U.S.C. § 1981.[4] (Compl. ¶¶ 20-23.) Specifically, Plaintiff alleges that throughout his employment he was subjected to racial discrimination, suffered disparate treatment, and was constructively discharged by Defendant due to his race and support of fellow African-American employees. (See Compl.) Plaintiff's claim also includes allegations that he was retaliated against by the Defendant for his activities in opposition to racial discrimination against himself and other African-Americans who worked for Defendant. (Id.)

Defendant asserts that it never discriminated against Plaintiff. (See Def.'s Mot. Summ. J.) It argues that Plaintiff had an exemplary thirty year career, including many accommodations and promotions, culminating in Plaintiff's retirement. (Id. at 3.) It also contends that any assignment of Plaintiff to a new sales team and sales territory was not for discriminatory or retaliatory purposes, but for purposes of business continuity and business need in conjunction with a new, nationwide sales strategy called Wall-to-Wall that was implemented in the Eastern Region in 2007.[5] (Id.) Regarding Plaintiff's claim that Defendant did not offer him a severance

---

[4] 42 U.S.C. § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[5] According to Defendant, it "implemented a new sales strategy called Wall-to-Wall, whereby the Kraft and Nabisco sales forces were combined and sales representatives and managers were responsible for an entire portfolio of Kraft and Nabisco products." (Def.'s Mot. Summ. J. at 4 (citations omitted)). "The goal of Wall-to-Wall was to improve efficiencies and logistical effectiveness in customer grocery stores by minimizing the number of Kraft Sales Representatives that were present in a store on a daily basis." (Id. (citations omitted).)

pay package when he retired because of discriminatory and retaliatory purposes, Defendant asserts that its decision was in accordance with its Severance Pay Plan, which does not allow severance pay packages to people who voluntarily retire. (Id. at 14.) Specifically, Defendant points to Section 4.2(a) of its Severance Pay Plan which states that an employee is eligible for severance pay if:

> (a) The employee's employment with an Employer is terminated through no fault of the Employee by:
>
> (I)   Permanent reduction in the Employer's work force; or
> (ii)  Permanent shutdown of a plant, department or subdivision thereof; or
> (iii) Job elimination.

(Id.; Ex. L (Severance Pay Plan)). Additionally, Defendant points to Section 4.4(a) of the Severance Pay Plan which states that an employee is not eligible for a severance pay package if "the employee voluntarily resigned from employment with the Employer." (Id.; Ex. L.)

### 1. Law

Section 1981 employment discrimination claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999). First, the plaintiff "must carry the initial burden . . . of establishing a prima facie case of . . . discrimination." McDonnell Douglas, 411 U.S. at 802. "The burden then must shift to the [defendant] to articulate some legitimate, nondiscriminatory reason for the [plaintiff's] rejection." Id. Subsequently, the burden shifts back to the plaintiff "to show that [defendant's] stated reason for respondent's rejection was in fact pretext." Id. at 804. Although the burden of production may shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

11

remains at all times with the plaintiff." Jones, 198 F.3d at 410. Most cases turn on the third stage, i.e., whether the plaintiff is able to establish pretext. Id.

In order to survive a motion for summary judgment when the defendant offers a legitimate, nondiscriminatory reason for its actions, a plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either disbelieve the employer's articulated legitimate reasons; or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). "This means that the fact finder must either: (1) 'disbelieve the employer's articulated legitimate reasons,' finding them to be post hoc fabrications or otherwise not really motivating the employment action; or (2) 'believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes, 32 F.3d at 764).

To prove pretext through the first method, "the plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons . . . nor produce additional evidence beyond her prima facie case." Id. (citations omitted). However, a "plaintiff must point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action." Id. (quoting Fuentes, 32 F.3d at 765 (emphasis in original)).

In the alternative, the second method to prove that the defendant's proffered legitimate

and nondiscriminatory reason is merely pretext, "a plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence" that invidious discrimination was a motivating or determinative factor in the defendant's adverse employment action. Id. (citing Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997)). "For example, the plaintiff may show that the employer has previously discriminated against [him or her], that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Id. (citing Fuentes, 32 F.3d at 765).

### *2. Analysis*

Plaintiff has failed to point to any real evidence in opposition to Defendant's Motion for Summary Judgment, and has also failed to substantially respond to Defendant's Statement of Undisputed Facts. Plaintiff's failures have occurred despite the fact that all fact and expert discovery was conducted over a period of more than six months. For brevity's sake, we assume *arguendo* that Plaintiff has established a prima face case of race discrimination. Having viewed the evidence, we find that Defendant has met its relatively light burden of articulating a legitimate, nondiscriminatory reason for its actions. Regarding Plaintiff's burden of proving pretext, he fails to produce any substantial evidence to rebut or show that the reasons articulated by Defendant are a pretext for discrimination. For example, Plaintiff's argument regarding his disparate treatment claim under Section 1981 states:

> [t]o the extent that the Court finds that defendant has met its
> burden of articulating a legitimate, non-discriminatory reason for
> making the assignments at issue, [Plaintiff] contends that the same

13

> evidence that establishes a prima facie case of discrimination establishes that defendant's stated reason was pretextual.

(Pl.'s Mem. of Law Opp'n Def.'s Mot. Summ. J. at 10 n.3.) This argument does not point to any evidence that the reasons given by Defendant were not what actually motivated its actions or that invidious racial discrimination was the motivating or determinative factor for Defendant's actions. Likewise, Plaintiff's argument regarding his constructive discharge claim under Section 1981 is devoid of any pretextual analysis pointing to the record or any actual evidence. Instead, he generally argues that his work conditions were so intolerable that he was compelled to resign. (Id. at 10-12.)

Plaintiff fails entirely to provide any real legal analysis or application of law to specific facts relating to pretext; thereby, failing to proffer any evidence or argument suggesting that Defendant's explanations are false or pretextual. Consequently, Defendant is entitled to the entry of summary judgment in its favor on Plaintiff's claims of race discrimination under Section 1981 for constructive discharge and disparate treatment.

Defendant also moves for summary judgment on Plaintiff's claim for retaliation under Section 1981. "Retaliation claims asserted under Section 1981 are also analyzed under the McDonnell Douglas burden shifting framework." Ade v. KidsPeace Corp., 698 F. Supp. 2d 501, 519 (E.D. Pa. 2010). In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (citation omitted). "Protected activity includes 'formal charges of discrimination as well as informal

protests of discriminatory employment practices, including making complaints to management.'"
Gilbert v. Phila. Media Holdings LLC, 564 F. Supp. 2d 429, 439 (E.D. Pa. 2008) (quoting Barber
v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995)). If the plaintiff successfully makes a
prima facie case of retaliation, the burden shifts to the employer to produce evidence that it
imposed the adverse employment action for legitimate reasons. Id. (citing Moore v. City of
Phila., 461 F.3d 331, 342 (3d Cir. 2006)). Similar to the discrimination context, the plaintiff
must then provide evidence that casts substantial doubt on the employer's reasons that would
support a jury finding that the reasons are merely pretext for retaliation. Id.

As we did regarding Plaintiff's other Section 1981 claims, for the sake of expediency, we
assume *arguendo* that Plaintiff has made out his prima face case, and Defendant provided
legitimate nondiscriminatory reasons for its action. Also, similar to the Plaintiff's other Section
1981 claims, Plaintiff's retaliation claim fails under the pretext prong of the McDonnell Douglas
burden shifting framework.

Plaintiff offers some argument regarding pretext in relation to his Section 1981 retaliation
claim, but fails to provide evidence casting substantial doubt on Defendant's reasons that would
support a jury finding that the reasons are merely pretext for retaliation. Plaintiff asserts that
Defendant's assignments of sales territories and sales teams were motivated, in part, to retaliate
against him for having previously complained about discrimination and harassment. (Pl.'s Mem.
of Law Opp'n Def.'s Mot. Summ. J. at 16.) Defendant argues that its assignments of sales
territories and sales teams were based on business continuity and business need, which included
the consideration of factors such as: customer population (i.e., the number of stores in a given
market); density of the stores within a given region; geography of the stores; and the ability to

influence merchandising in a store. (Def.'s Mot. Summ J. at 5-12; Def.'s Reply at 3.) In support of this argument, Defendant relies upon the testimony of the following employees who were primarily responsible for designing Wall-to-Wall sales territories and sales teams in the Metro regions: James Frusciante; Julie Duffy Hagovsky; and Lisa Angeles. (Def.'s Reply at 2, Ex. A (Frusciante Dep. at 42:22-43:14-46:20), Ex. B (Hagovsky Dep. at 12:14-22), Ex. C (Angeles Dep. at 20:6-17; 21, 21:2-23:21; 24:4-25:1-8).)

While Plaintiff argues against Defendant's legitimate and nondiscriminatory reason of business continuity and need, he offers nothing more than his speculative beliefs and assumptions. He fails to proffer any evidence upon which a jury could determine the issue based on factors other than Defendant's legitimate, nondiscriminatory reason of business continuity and business need. It is not sufficient for a Plaintiff to "rest upon the mere allegations . . . of [their] pleading[s], but [their] response, by affidavits or as otherwise provided under [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." Moloney v. City of Reading, 201 Fed. App'x 853, 855 (3rd Cir. 2006).

Plaintiff also asserts that Defendant retaliated against him by denying him a severance pay package. (Pl.'s Opp'n Def.'s Mot. Summ. J. at 14-18.) Defendant states that Plaintiff was not entitled to severance pay because he retired and was ineligible based on the terms of Defendant's Severance Pay Plan. (Def.'s Mot. Summ. J. at 23-24, Ex. L; Def.'s Reply at 5.) Defendant points out that Plaintiff does not dispute the applicability of its Severance Pay Plan or the fact that he was ineligible based upon its terms, but he asserts that because some former employees, Stanley White (African-American), Tim Galloway (Caucasian), Karl Piergiorgi (Caucasian), and John McCleary (Caucasian), were provided severance pay, he is entitled to it.

(Def.'s Reply at 5.)  Defendant successfully addresses each of Plaintiff's arguments, in turn, by showing that Plaintiff has not provided any evidence showing that a person who voluntarily retired from Defendant was provided severance pay.

Regarding Stanley White, a former Customer Business Manager, Plaintiff proffers a declaration by Mr. White ("White Dec.") in which he states that "[he] received a severance package because [he] threatened to sue [Defendant] for actions taken against [him] by [his] supervisor, Mike Ridenhour."  (Pl.'s Opp'n Def.'s Mot. Summ. J. at 17, Ex. 10 (White Decl.) ¶ 4.)  White's Declaration states that, after discussions with one of Defendant's employees, he made his demand known and "[he] accepted the severance package and resigned from [Defendant]."  (Id. ¶ 9.)  Defendant counters Mr. White's Declaration by pointing to the deposition testimony of Richard Martino, who held a supervisory position with Defendant, stating that Mr. White told him in 2011 (approximately three years after Plaintiff's retirement) that his job was eliminated, and he decided to retire.  (Def.'s Reply, Ex. D (Richard Martino Dep.) at 31-32.)  Mr. Martino also stated that Mr. White received a severance pay package.  (Id., Ex. D at 31.)  Regardless of whether Mr. White's job was eliminated or if he received a severance pay package in exchange for his agreement not to sue and resign, Plaintiff fails to present any evidence showing that a person who voluntarily retired was provided severance pay.

Likewise, Plaintiff's reliance on the fact that Mr. Galloway, Mr. Piergiorgi and Mr. McCleary were provided severance pay packages does not prove pretext.  Relying upon the testimony of Mr. Martino, Defendant argues that Mr. Galloway, an Area Retail Director, resigned from Defendant in 2010 when it was resizing its workforce and offering severance pay packages to its employees.  (Id., Ex. D at 22:16-28:6.)  Consequently, Mr. Galloway was offered a

17

severance pay package as part of Defendant's work force reduction. (Id.) Likewise, Defendant, relying upon Mr. Martino's testimony, shows that Mr. Piergiorgi, a Regional Sales Manager, received severance pay because his position was eliminated. (Id., Ex. D, 16:19-17:20.) Also, Mr. McCleary, a Senior Customer Business Manager, was offered a severance pay package when his job was eliminated. (Id., Ex. D at 28:7-29:2; Def.'s Mot. Summ. J., Ex. A (Frusciante's Dep. at 34:14-37:10), Ex. C (Angeles Dep.) at 58:19-61:9.) In the face of evidentiary support provided by Defendant affirming its legitimate and nondiscriminatory reason for not giving Plaintiff a severance pay package because of Plaintiff's voluntarily retirement, Plaintiff does not provide any showing identifying a similarly situated former employee who received severance pay at the time of his voluntarily retirement. Neither does he provide any showing of pretext inferring that Defendant did not act for the asserted nondiscriminatory reasons.

For the same reasons stated in the discussion of Plaintiff's Section 1981 race discrimination claims, *supra,* we conclude that Plaintiff has not met his burden of establishing that Defendant's proffered legitimate reason was a pretext for retaliatory termination. Accordingly, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim under Section 1981.

Lastly, Plaintiff argues that his hostile work environment claim should not be dismissed. (Pl.'s Mem. of Law Opp'n Def.'s Mot. Summ. J. at 18-19.) Plaintiff explicitly relies upon the arguments he put forth regarding his Section 1981 claims to assert that his hostile work environment claim should survive summary judgment. (Id.) Due to the fact that none of Plaintiff's claims under Section 1981 survive, he has failed to substantiate an actionable hostile work environment claim.

## IV. **CONCLUSION**

Plaintiff's request for a continuance to conduct additional discovery in this case does not meet the requirements of Rule 56(d) and, therefore, is denied. Summary Judgment is entered in favor of Defendant regarding Plaintiff's claims under Section 1981 for constructive discharge, disparate treatment, hostile work environment, and retaliation due to Plaintiff's failure to provide any evidence, direct or circumstantial, from which a fact-finder could reasonably find, by a preponderance of the evidence, that Defendant's proffered reasons for its actions are false or pretextual.

An appropriate Order follows.